JUSTINA K. SESSIONS, State Bar No. 270914
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower – Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: jsessions@wsgr.com

JONATHAN M. JACOBSON
RACHAEL A. RACINE (*admitted pro hac*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: jjacobson@wsgr.com
Email: rracine@wsgr.com

*Attorneys for Defendants Google LLC, et al.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL REALE,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.<br><br>Defendants. | CASE NO.: 3:22-cv-00562-VC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

ARGUMENT ..... 2

I. PLAINTIFF CANNOT SAVE HIS SECTION 1 CLAIM ..... 2

II. PLAINTIFF CANNOT SAVE HIS SECTION 2 CLAIM ..... 3

III. PLAINTIFF CANNOT SAVE HIS ROBINSON-PATMAN ACT CLAIM ..... 4

IV. PLAINTIFF CANNOT SAVE HIS CUTPA CLAIM ..... 5

V. PLAINTIFF'S CUTPA CLAIM IS BARRED BY THE FIRST AMENDMENT AND THE CDA ..... 7

A. Plaintiff's Claims are Barred by the First Amendment ..... 7

B. Plaintiff's Claims are Barred by the CDA ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

## CASES

*Abrahams v. Young & Rubicam, Inc.*,
240 Conn. 300, 692 A.2d 709 (1997) ....................6, 7

*Ambook Enters. v. Time Inc.*,
612 F.2d 604 (2d Cir. 1979)....................4

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*,
287 Conn. 208 (Con. Sup. Ct. 2008)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1

*Aspen Skiing v. Aspen Highlands Skiing*,
472 U.S. 585 (1985)....................3

*Associated Press et al v United States*,
326 U.S. 1 (1945)....................8

*Caldor, Inc. v. Heslin*,
215 Conn. 590 (1990) ....................6

*Catalano, Inc. v. Target*,
446 U.S. 643 (1980)....................5

*Children's Health Def. v. Facebook Inc.*,
546 F. Supp. 3d 909 (N.D. Cal. June 29, 2021)....................1

*Cooney v. Rossiter*,
583 F.3d 967 (7th Cir. 2009) ....................1

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984)....................2

*Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross & Blue Shield*,
778 F. Supp. 1253 (S.D.N.Y. 1991)....................4

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ....................8

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ....................3

*Harris v. Bradley Memorial Hospital & Health Center, Inc.*,
296 Conn. 315, 994 A.2d 153 (2010) ....................6

*Hennegan v. Pacifico Creative Service, Inc.*,
674 F. Supp. 303 (D. Guam 1987)....................4

*Hinchliffe v. American Motors Corp.*,
184 Conn. 607 (1981) ....................6

*Informed Consent Action Network v. YouTube, LLC*,
No. 20-cv-09456-JST, 2022 U.S. Dist. LEXIS 18377
(N.D. Cal. Jan. 31, 2022) ....................1

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
407 F.3d 1027 (9th Cir. 2005) ....................2

*May Dep't Store v. Graphic Process Co.*,
637 F.2d 1211 (9th Cir. 1980) ....................4

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................1

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ....................9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ....................9

*NetChoice, LLC v. Moody*,
No. 4:21cv220-RH-MAF, 2021 U.S. Dist. LEXIS 121951
(N.D. Fla. June 30, 2021)....................9

*O'Handley v. Padilla*,
No. 21-cv-07063-CRB, 2022 U.S. Dist. LEXIS 4491
(N.D. Cal. Jan. 10, 2022) ....................7

*Toys "R" US v. FTC*,
221 F.3d 928 (7th Cir. 1999) ....................4

*United States v. Google,*
1:20-cv-03010-APM (D.D.C.)....................2

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
546 U.S. 164 (2006)....................5

*Zimmerman v. Facebook, Inc.*,
No. 19-cv-04591-VC, 2020 U.S. Dist. LEXIS 183323
(N.D. Cal. Oct. 2, 2020)....................8

## STATUTES

15 U.S.C. § 1....................1, 2, 3, 5, 8

15 U.S.C. § 2....................1, 3, 4

15 U.S.C. § 13.................... *passim*

47 U.S.C. § 230(c)(1)....................2, 7, 8, 9

Conn. Gen. Stat. § 42-110b....................1, 5

Conn. Gen. Stat. § 42-110g ........................................ 1, 5

**RULES**

Fed. R. Civ. P. 1 ........................................ 1

Fed. R. Civ. P. 8 ........................................ 1

Fed. R. Civ. P. 11 ........................................ 4

Fed. R. Civ. P. 12(b)(6) ........................................ 9

**OTHER AUTHORITIES**

U.S. Const. amend. I ........................................ 7, 8, 9

Defendants' motion to dismiss should be granted. Plaintiff has failed to provide any factual or legal basis for the Court to conclude that his Amended Complaint states a claim upon which relief can be granted. The Rule 8 plausibility standard applies to "all civil actions," even those brought by *pro se* plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting Fed. R. Civ. P. 1); *accord Moss v. United States Secret Serv.*, 572 F.3d 962, 969 n.7 (9th Cir. 2009); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (Posner, J.). And both the Ninth Circuit and courts in this District have consistently applied that standard to dismiss conclusory or implausible state action allegations, including in cases like this one. *See*, *e.g.*, *Informed Consent Action Network v. YouTube, LLC*, No. 20-cv-09456-JST, 2022 U.S. Dist. LEXIS 18377 (N.D. Cal. Jan. 31, 2022); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909 (N.D. Cal. 2021).

At its core, Plaintiff's case seeks to prevent Defendants from taking measures to curtail the flow of dangerous misinformation on its private platform. No matter how many times he refers to Defendants as "The Monopoly," his opposition cannot state a viable antitrust or state-law claim, or transform Google into a state actor. Plaintiff has not and cannot circumvent the well-established principle that a parent company cannot conspire with its subsidiaries in violation of Section 1 of the Sherman Act (15 U.S.C. § 1), nor has he alleged any element required to state a monopolization claim under Section 2 of the Sherman Act (15 U.S.C. § 2). Plaintiff also has not and cannot demonstrate how the Robinson-Patman Act ("RPA") applies to his claims arising from Defendants' intangible services or demonstrate how he otherwise meets any substantive element of an RPA claim (15 U.S.C. § 13). Plaintiff has not and cannot demonstrate how the Amended Complaint adequately alleges that Defendants' conduct was "unfair" or "deceptive" in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") or how he suffered an

"ascertainable loss" as a result (Conn. Gen. Stat. §§ 42-110b and 42-110g). And, finally, Plaintiff cannot evade the protections provided by the First Amendment and the Communications Decency Act (47 U.S.C. § 230(c)(1)), which independently bar his state-law claims.

**ARGUMENT**

## I. PLAINTIFF CANNOT SAVE HIS SECTION 1 CLAIM

Plaintiff fails to address the deficiency fatal to his Section One allegations: Defendants are not separate entities. In order to state a claim under Section 1 of the Sherman Act, Plaintiff must allege, among other facts, "the existence of a contract, combination, or conspiracy among *two or more separate entities*." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1033 (9th Cir. 2005) (emphasis added).

As he reiterates in his opposition, Alphabet is the parent company of subsidiaries Google and YouTube. (Memorandum of Law in Opposition to Motion to Dismiss ("Opp."), Dkt. Entry No. 51 at 4). Therefore, under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), Plaintiff's Section 1 claim should be dismissed. In his opposition, Plaintiff ignores this binding authority and suggests that the Court should apply a rule of reason analysis. (Opp. at 6-7.) But the threshold inquiry reveals that Defendants are related corporate entities that, under Supreme Court precedent, are incapable of conspiring together.

Plaintiff further attempts to save his Section 1 claim by raising arguments that mirror the monopolization claims brought by the United States Department of Justice in *United States v. Google,* 1:20-cv-03010-APM (D.D.C.) ("Search Litigation"). But the arguments from the Search Litigation, which concerns Google's search advertising business, are irrelevant to facts underlying Plaintiff's alleged injury, which stems from his interactions with YouTube. Allegations from the Search Litigation provide no inferential value to this litigation.

The Court should grant Defendants' motion to dismiss Plaintiff's Section 1 claim.

## II. PLAINTIFF CANNOT SAVE HIS SECTION 2 CLAIM

The Amended Complaint fails to allege any element required to state a monopolization claim. "To establish liability under § 2, a plaintiff must show: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (internal quotations and citation omitted). Nowhere in his opposition brief does Plaintiff provide any facts to explain the alleged relevant market. Nowhere in his opposition brief does Plaintiff explain how Defendants possessed monopoly power in a relevant market. Nowhere in his opposition brief does Plaintiff explain how taking down a video is anticompetitive. Plaintiff has left the Court with no way to plausibly infer that Defendants have violated Section 2 of the Sherman Act.

Plaintiff devotes his discussion of Section 2 to *Aspen Skiing v. Aspen Highlands Skiing*, 472 U.S. 585 (1985). However, Plaintiff's reliance on *Aspen Skiing* is misplaced. *Aspen Skiing* stands for the proposition that even a firm with monopoly power has no general duty to contract. *Id.* at 600-05. Indeed, Plaintiff acknowledges this general principle in his brief, citing to the jury instructions upheld by the Court, which state that "if there were legitimate business reasons for the refusal [to deal], then the defendant, even if he is found to possess monopoly power in a relevant market, has not violated the law." (Opp. at 7-8 (citing *Aspen Skiing*, 472 U.S. at 597)). Defendants had no duty to deal with Plaintiff. They also had legitimate business reasons for removing Plaintiff's video containing COVID-19 misinformation from YouTube. Plaintiff expressly acknowledged these reasons when he agreed to the terms of service and to abide by the community guidelines. Neither Plaintiff's Amended Complaint nor his opposition brief disputes these facts.

Because Plaintiff has failed to allege any required element of a monopolization claim, his Section 2 claim should be dismissed.

## III. PLAINTIFF CANNOT SAVE HIS ROBINSON-PATMAN ACT CLAIM

Plaintiff's RPA claim must be dismissed because his allegations are not covered by the terms of the statute. In his opposition, Plaintiff argues, with no citation to the relevant section of his Amended Complaint, that Defendants have violated the Robinson-Patman Act by "offering free and reduced price services to one type of content provider while purposefully injuring another." (Opp. at 9.) "It is necessary for an action under section 2(c) of the Robinson-Patman Act that the transactions between the parties constitute a sale of goods, wares, or merchandise and not merely a contract for services." *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980) (internal quotations and citations omitted); *see also Hennegan v. Pacifico Creative Serv., Inc.*, 674 F. Supp. 303, 305 (D. Guam 1987) (granting defendants' motion for judgment on the pleadings "because the complaint alleges facts which constitute services within the meaning of § 2(c) of the Robinson-Patman Act").

Plaintiff concedes that his claims concern "services," not tangible goods. (Opp. at 9.) Because Plaintiff's allegations concern "services" and not tangible goods, his RPA claim must be dismissed. *Ambook Enters. v. Time Inc.*, 612 F.2d 604, 610, 620 (2d Cir. 1979) (affirming summary judgment on Robinson-Patman Act claims because newspaper advertising is not a commodity protected under Section 2(a)); *Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross & Blue Shield*, 778 F. Supp. 1253, 1258-59 (S.D.N.Y. 1991) (imposing Rule 11 sanctions because there exists "an abundance of authority establishing that the Robinson-Patman Act applies only to goods and commodities and does not apply to services such as insurance").

Plaintiff does not, and cannot, proffer any legal basis for this Court to conclude that his RPA claim based on "services" should not be dismissed. Instead, he cites to *Toys "R" Us, Inc.*

*v. FTC*, 221 F.3d 928 (7th Cir. 1999), a case that concerned tangible goods (toys) and, perhaps more importantly, did not concern the RPA at all. The same is true of his citation to *Catalano, Inc. v. Target*, 446 U.S. 643 (1980) (concerning alleged conspiracy to eliminate short-term trade credit for beer in violation of Section 1 of the Sherman Act).

Plaintiff has also failed to explain how his Amended Complaint alleges any substantive element of an RPA claim, like how Defendants' alleged discrimination caused competitive injury through lessened competition. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006) (internal quotation marks omitted) (the RPA "proscribes price discrimination only to the extent that it threatens to injure competition").

Because Plaintiff has failed to allege conduct concerning tangible goods or demonstrate any injury to competition, Plaintiff's RPA claim should be dismissed.

## IV. PLAINTIFF CANNOT SAVE HIS CUTPA CLAIM

Plaintiff's CUTPA claim should also be dismissed. The CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b. And Plaintiff can only recover under the CUTPA if he has sustained an "ascertainable loss of money or property, real or personal." Conn. Gen. Stat. § 42-110g.

Plaintiff has failed to proffer any legal or factual basis from which the Court could plausibly infer that Defendants' alleged conduct was "unfair" or "deceptive." Plaintiff's opposition merely cites to certain paragraphs in the Amended Complaint without explaining why these paragraphs are sufficient to meet the requirements set forth in Connecticut law. As noted in Defendants' opening brief, Plaintiff has failed to demonstrate how removal of his video—pursuant to the terms of service he executed—was unfair or deceptive. Plaintiff has failed to

specifically allege that Defendants made any misrepresentation or that he reasonably relied on such misrepresentation. *See Caldor, Inc. v. Heslin*, 215 Conn. 590, 597 (1990) (citation omitted).

Plaintiff's opposition, like his Amended Complaint, also fails to demonstrate "ascertainable loss." He states that "[t]he ascertainable loss at issue is the time spent creating content and preclusion from ad revenue along with overt efforts to preclude them from the market on equal footing (¶¶68, 70)." (Opp. at 10). However, the legal authority to which he cites shows why he cannot recover for loss of "time spent creating content"—"CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of *money or property*, real or personal." (Opp. at 11, citing *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 350-51, 994 A.2d 153 (2010) (emphasis added)). Loss of time is not covered by the statute.

While Plaintiff does allege some monetary loss, Plaintiff's alleged loss from "preclusion from ad revenue" cannot be "ascertained" and, therefore, does not support his CUTPA claim. As stated in the legal authority to which Plaintiff cites, in order for monetary loss to be "ascertainable," it must be "measurable." *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 614 (1981) ("loss is ascertainable if it is measurable"); *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208 (Con. Sup. Ct. 2008) (same). Plaintiff has not alleged any fact from which the Court could plausibly infer that he had any past, present, or future expectation of generating revenue via YouTube. Ad revenues to which Plaintiff had no realistic expectation are not "measurable."

The Amended Complaint also fails to allege any causal connection between his would-be advertising revenue and the takedown of his videos. Plaintiff fails to make any such connection in his opposition and, instead, cites cases that expressly require this showing in order to state a CUTPA claim. *Artie's Auto Body*, 287 Conn. at 218 (quoting *Abrahams v. Young &*

*Rubicam, Inc.*, 240 Conn. 300, 306 (1997)) ("When plaintiffs seek money damages, the language 'as a result of' in § 42-110g (a) 'requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff'").

Because Plaintiff has failed to demonstrate that Defendants' alleged conduct was "unfair" or "deceptive," or that he suffered an "ascertainable" monetary loss, Plaintiff's CUTPA claim must be dismissed.

## V. PLAINTIFF'S CUTPA CLAIM IS BARRED BY THE FIRST AMENDMENT AND THE CDA

Finally, Plaintiff's opposition fails to refute Defendants' argument that, to the extent that Plaintiff claims that removal of his video violates CUTPA, that claim is also barred by the First Amendment to the United States Constitution and by Section 230(c)(1) of the Communications Decency Act.

### A. Plaintiff's Claims are Barred by the First Amendment

As explained in Defendants' motion, the First Amendment protects "the exercise of editorial control and judgment" by those who publish third-party content, including decisions of whether to publish commentary on public affairs, such as the COVID-19 pandemic. *See, e.g.*, *O'Handley v. Padilla*, No. 21-cv-07063-CRB, 2022 U.S. Dist. LEXIS 4491 (N.D. Cal. Jan. 10, 2022) ("Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies"). Plaintiff's own opposition shows why his CUTPA claim must be dismissed: as he acknowledges, the "government cannot compel speech or association." (Opp. at 17.) But that is exactly what his CUTPA claim seeks to do, insofar as it would penalize Defendants for refusing to allow the publication of Plaintiff's content on Defendants' private platform.

In his opposition, Plaintiff relies on *Associated Press v. United States*, 326 U.S. 1 (1945) (and other related cases), which suggests that the First Amendment does not shield press companies from liability for colluding in violation of Section 1. This is beside the point; while Plaintiff has failed to state a Section 1 claim, Defendants' First Amendment argument is not tied to the Sherman Act claim, but instead to Plaintiff's CUTPA claim, which is not based on a collusion or monopolization theory. That claim, which seeks to hold YouTube liable for making editorial choices that Plaintiff disagrees with, is barred by the First Amendment, and nothing in *Associated Press* suggests otherwise.

**B. Plaintiff's Claims are Barred by the CDA**

In addition to failing on its own terms, Plaintiff's CUTPA claim is also barred by Section 230(c)(1) because it seeks to hold Defendants liable for their decisions about whether to publish third-party content, such as Plaintiff's COVID-19 misinformation videos. (Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. Entry No. 40 at 10-13.) Plaintiff does not challenge this established application of Section 230. Instead, he denies reality, arguing that "Defendants are not publishers." (Opp. at 8.) But, as Plaintiff's own allegations make clear, the essence of his CUTPA claim is to seek to hold Defendants liable for their decisions to remove Plaintiff's content from YouTube while continuing to publish other users' content. *See*, *e.g.*, AC ¶¶ 11-12, 17, 21-29, 35. And, numerous cases, including one of this Court's own recent cases, has found, under Section 230, such decisions are squarely protected by Section 230. *Zimmerman v. Facebook, Inc.*, No. 19-cv-04591-VC , 2020 U.S. Dist. LEXIS 183323, at *4 (N.D. Cal. Oct. 2, 2020) (Chhabria, J.) (quoting *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc)) (dismissing claims because Section 230(c) "'immunize[s] the *removal* of user-generated content, not the creation of

content,' such that 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230'"); *see also NetChoice, LLC v. Moody*, No. 4:21cv220-RH-MAF, 2021 U.S. Dist. LEXIS 121951, at *20 (N.D. Fla. June 30, 2021) ("Claims based on alleged inconsistency of a platform's removal of some posts but not others are preempted."); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29 (2021) (Section 230(c)(1) barred claims accusing Twitter of "unfairly applying its general rules regarding what content it will publish"). There is no basis for a different result here.[1]

**CONCLUSION**

For these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a viable cause of action under federal or state law and because his claims are barred by the First Amendment and Section 230(c) of the CDA.

[1] In his opposition, Plaintiff responds to this long line of authority by pointing to inane and immaterial details in an attempt to distinguish the cases. For example, he states, without further explanation, that *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009) is "unavailing" because the host site gave "business feedback." Plaintiff leaves the Court to guess why that detail is relevant. Plaintiff similarly highlights other factual details that were not relevant to the respective courts' analyses. In other cases, he makes no attempt to distinguish the case at all. (Opp at 16-17.) That is because he cannot.

Date: March 22, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Justina K. Sessions*
One Market Plaza
Spear Tower – Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947 2099
Email: jsessions@wsgr.com

JONATHAN M. JACOBSON
RACHAEL A. RACINE (*admitted pro hac*)
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: jjacobson@wsgr.com
Email: rracine@wsgr.com

*Attorneys for Defendants Google LLC, YouTube LLC and Alphabet Inc.*